UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| LARISSA WHIPPLE, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>JOHNSON & JOHNSON CONSUMER INC.,<br><br>Defendant. | Case No.: 3:21-cv-50226<br><br>Honorable Iain D. Johnston |

**DEFENDANT JOHNSON & JOHNSON CONSUMER INC.'S
MOTION TO TRANSFER PURSUANT TO 28 U.S.C. § 1404(a)**

Defendant Johnson & Johnson Consumer Inc. ("JJCI") hereby moves, pursuant to 28 U.S.C. § 1404(a) to transfer this action to the U.S. District Court for the District of New Jersey.

**INTRODUCTION**

Pursuant to 28 U.S.C section 1404(a), this Court should transfer the instant action to the District of New Jersey, where JJCI is incorporated and has its headquarters, because the balance of relevant considerations tips strongly in favor of transfer for the convenience of the parties and witnesses and in the interests of justice.

The First Amended Class Action Complaint ("Complaint") asserts consumer fraud claims against JJCI, and seeks certification of a "Nationwide Class," a "Consumer Fraud Multi-State Class," and an "Illinois Sub-Class." Complaint, ¶ 108. Because New Jersey is JJCI's state of incorporation and location of its headquarters, *id.*, ¶ 27, there is no question that this action could have been brought in the District of New Jersey. Indeed, a substantially similar putative nationwide consumer class action arising from use of DMDM Hydantoin in the OGX products at issue here is already pending in the District of New Jersey, *Levy v. Johnson & Johnson Consumer*

*Inc.*, Case No. 3:21-cv-10222-MAS-LHG (D.N.J. April 26, 2021) ("*Levy*").

The balance of relevant factors under section 1404(a) weighs substantially in favor of transfer to the District of New Jersey. The situs of material facts raised by consumer claims premised on alleged misrepresentations and related omissions about a consumer product have their locus where the defendant is headquartered, for purposes of a section 1404(a) motion. The conduct giving rise to this action is that JJCI allegedly made marketing misstatements by failing adequately to warn that users of its OGX-brand shampoo and conditioning products might experience allergic reactions (*i.e.*, scalp irritation and/or hair loss) due to the presence of DMDM Hydantoin as one of the products' ingredients. JJCI's executives and scientists with relevant knowledge, information, and decision-making authority on these matters are located in New Jersey, at JJCI's New Jersey headquarters, or at Vogue International LLC's office in Florida. Thus, the relevant and material contacts concerning Plaintiff's claims are overwhelmingly in or near New Jersey, and transfer to the District of New Jersey is warranted. In stark contrast, Plaintiff's forum choice is entitled to minimal weight in this putative nationwide class action. Moreover, transfer to the District of New Jersey will also promote judicial efficiency and streamline litigation, especially given the pendency of the substantially identical *Levy* action in the District of New Jersey, with which this action can readily be consolidated. As detailed further below, the balance of considerations tips strongly in favor of transfer to the District of New Jersey, and JJCI's motion to transfer should be granted.

## PROCEDURAL HISTORY

Plaintiff Larissa Whipple ("Plaintiff") filed her original Complaint in the United States District Court for the Northern District of Illinois on June 7, 2021.[1] Plaintiff alleges that she resides in Davie, Illinois. Complaint, ¶ 26. But the sole defendant, JJCI, is a New Jersey corporation with

---

[1] On June 8, 2021, this Court ordered Plaintiff to amend the Complaint. *See* D.E. 5. Plaintiff filed the First Amended Class Action Complaint on June 25, 2021.

its principal place of business located in the District of New Jersey. *See id.*, ¶ 27; *see also* Exhibit A, Declaration of Euen Ekman Gunn ("Gunn Decl."), ¶ 4.

Plaintiff alleges that, during the class period, she purchased OGX-brand shampoo and conditioning products (hereinafter "Products"). Complaint, ¶ 101. Plaintiff does not specify which of the twenty-nine (29) Products she purchased. *See id.* Plaintiff does not allege with particularity any marketing or other statement by JJCI on which she claims to have relied in purchasing the Products. Plaintiff seeks certification of a "Nationwide Class" comprised of "[a]ll persons in the United States who purchased" any of the 29 OGX-brand shampoo and conditioning Products identified in the Complaint, *id.*, ¶ 108; a "Consumer Fraud Multi-State Class" of "[a]ll persons in the States of California, Florida, Illinois, Massachusetts, Michigan, Minnesota, Missouri, New Jersey, New York, and Washington" who purchased the Products, *id.*, as well as an "Illinois Sub-Class" comprised of those who purchased the Products in Illinois, *id.*

The Complaint alleges that JJCI made false, misleading and deceptive statements about the Products because it failed adequately to warn of claimed risks allegedly posed by one of the Products' listed ingredients: DMDM Hydantoin. *See*, *e.g.*, Complaint, ¶¶ 1-4. DMDM Hydantoin has commonly been used for decades by manufacturers of cosmetics and hair products as a preservative to prevent the growth of fungus and micro-organisms. *Id.*, ¶¶ 38-39. As the Complaint states, JJCI in 2012 began replacing various ingredients in its cosmetics products, including DMDM Hydantoin, *id.*, ¶¶ 39, 59-60. In 2016, JJCI acquired Vogue International LLC ("Vogue") and its beauty products, including the OGX Products, *id.*, ¶ 34. Plaintiff broadly criticizes JJCI for "fail[ing] to change the ingredient profile" of the OGX Products by removing DMDM Hydantoin after JJCI "acquired Vogue," *id.*, ¶ 12, or JJCI "could have used lower levels of DMDM Hydantoin," *id.*, ¶ 62. ***Plaintiff ignores that the trace amounts of DMDM Hydantoin***

***used by Vogue in the OGX Products are far below the threshold levels deemed "safe" to the average consumer in the very scientific literature cited in Plaintiff's Complaint.***[2] Nevertheless, Plaintiff purports to base all her claims on the illegitimate theory that the mere presence of DMDM Hydantoin as a listed ingredient on the Products' labels – in precisely the manner required by the Food & Drug Administration ("FDA") – should expose JJCI to liability for "consumer fraud."

According to Plaintiff, any use of the preservative DMDM Hydantoin as an ingredient in a shampoo or conditioning product might potentially cause "hair loss and/or scalp irritation," Complaint, ¶ 2, in at least that small subset of product users who have a pre-existing allergy and extreme hypersensitivity to any amount of "formaldehyde," *id.*, ¶¶ 44-54. DMDM Hydantoin is not "formaldehyde," nor is it alleged to be. Rather, as the Complaint alleges, DMDM Hydantoin is instead merely a "preservative" that "is a formaldehyde donor" because, when it comes in contact with water, it can "'release small amounts of formaldehyde.'" *Id.*, ¶¶ 2, 37-42 (citation omitted). Thus, for only the small subset or fraction of product users who are themselves allergic to formaldehyde, those persons might experience an allergic reaction to the Products. Such reactions are alleged to include "scalp irritation," "hair brittleness," or "hair loss." *Id.*, ¶¶ 2, 55, 57.

To address precisely the issue of allergic reactions to ingredients in cosmetics products, the

---

[2] The Complaint cites no scientific or other evidence that the trace amounts of DMDM Hydantoin used in the OGX Products exceeds the levels generally recognized as "safe," or otherwise actually causes scalp irritation or hair loss. Moreover, the Complaint disregards the 1988 conclusions of the safety assessment by the Cosmetic Ingredient Review (CIR) Expert Panel "that DMDM Hydantoin is safe as a cosmetic ingredient in the present practices of use," *see* Elder, R.L., *Final Report on the Safety Assessment of DMDM Hydantoin*, 7 JOURNAL OF THE AMERICAN COLLEGE OF TOXICOLOGY 244, 275 (1988), as well as the CIR's confirmation of that conclusion decades later, *see Annual Review of Cosmetic Ingredient Safety Assessments: 2005/2006*, 27 JOURNAL OF THE AMERICAN COLLEGE OF TOXICOLOGY 77, 77, 105-107 (1988) ("the present practices of use of DMDM Hydantoin would not result in more than 0.2% free formaldehyde, which is the concentration limit for free formaldehyde in cosmetic products that was previously established by the CIR Expert panel").

FDA decades ago promulgated its ingredients-disclosure requirements, 21 C.F.R. §§ 701.3(a)-701.3(r). The Complaint does not (and could not) allege that JJCI failed to comply with the FDA's ingredient-disclosure requirements. On the contrary, the Complaint itself includes pictures of the actual labels on each of the 29 OGX Products at issue, which all explicitly list "DMDM Hydantoin" as a product ingredient on the FDA-required back panel in precisely the manner required by the FDA. *See* Complaint, ¶ 10. The FDA's express purpose for its ingredient-disclosure requirement is to apprise consumers of the ingredients in all cosmetics products, so consumers can check for themselves and see if a given cosmetic product contains ingredients to which they might be allergic.[3]

Plaintiff apparently believes that the FDA's ingredient-disclosure requirement is insufficient, and therefore faults JJCI for failing to provide additional disclosures and warnings about the potential for allergic reactions on the Products' label or in advertising. *See* Complaint, ¶¶ 4, 17, 69, 85, 76, 79, 99. According to Plaintiff, the Products' labeling and marketing are misleading by failing to include additional or more specific warnings that the presence of DMDM Hydantoin as a listed product ingredient might cause allergic reactions in those allergic to formaldehyde, including scalp irritation and possible hair loss. *Id*.

Plaintiff also alleges that, due to the claimed absence of adequate warnings, certain representations on the Products' labeling or in product marketing were misleading or deceptive. *Id*., ¶¶ 4, 17, 74. Those representations include JJCI's marketing statements that the Products

---

[3] The FDA promulgated its ingredients-disclosure requirements specifically to apprise consumers of "[t]he presence of a substance" to which consumers may be "allergic or sensitive." 38 Fed. Reg. 28912, 28912 (Oct. 17, 1973). The FDA determined that imposing its "ingredient labeling" requirements on a "comprehensive" basis was "necessary to prevent the deception of consumers," *id*., with respect to the potential for "adverse reactions," including skin irritation, sensitivity, and "allergic reactions" to cosmetic products or their ingredients. 40 Fed. Reg. 8918, 8920, 8921, 8924 (March 3, 1975) (FDA's "cosmetic ingredient labeling" requirements are designed to identify for consumers those ingredients "expected to be the source of an irritant or allergic reaction").

would "smooth, nourish, soften, repair, and/or revive" hair," *id*., ¶ 2; "revive damaged or dry hair, add softness and shine, and prevent frizzing and tangling," *id*., ¶ 65; and "'deeply nourish,' 'gently cleanse,' and 'repair hair,'" *id*. These representations are undeniably true and not misleading in any manner to all consumers (including the average reasonable consumer) except only for those who are extremely hypersensitive and have a pre-existing allergy to formaldehyde in any form and even trace amounts. In a conclusory manner, the Complaint also generally alleges that JJCI guarantees that the Products are "safe," which again Plaintiff claims to be misleading given JJCI's alleged failure to provide the additional DMDM Hydantoin warning that Plaintiff says should have been given. *Id*., ¶ 69.

The Complaint asserts five claims, including: (1) violation of state consumer fraud statutes; (2) violation of the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS §§ 505/1, *et seq*. ("ICFA"); (3) violation of the Illinois Uniform Deceptive Trade Practice Act, 815 ILCS §§ 510/2, *et seq.*; (4) fraud; and (5) unjust enrichment. *See* Complaint ¶¶ 120-170.

## ARGUMENT

"For the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). In considering a transfer motion, the Court "must evaluate both the convenience of the parties and the various public interest considerations" and "decide whether, on balance, a transfer would serve 'the convenience of parties and witnesses' and otherwise promote 'the interests of justice.'" *Alt. Marine Const. Co. v. U.S. Dist. Ct. for the W. Dist. of Texas*, 571 U.S. 49, 63 (2013) (quoting 28 U.S.C. § 1404(a)). By its terms, section 1404(a) focuses the Court's analysis on "the convenience of the parties and witnesses" and "the interests of justice." 28 U.S.C. § 1404(a). The Court has discretion to decide a motion to transfer venue and determines

convenience and fairness on a "case-by-case basis" and allows the Court "to take into account all factors relevant to convenience and/or the interests of justice." *Rsch. Automation, Inc. v. Schrader-Bridgeport Int'l, Inc.*, 626 F.3d 973, 977, 978 (7th Cir. 2010). To determine convenience, courts in the Seventh Circuit have considered the plaintiff's choice of forum, the situs of material events, the relative ease of access to sources of proof, and the convenience of parties and witnesses. *See Jaramillo v. DineEquity, Inc.*, 664 F. Supp. 2d 908, 913 (N.D. Ill. 2009); *see also Rsch. Automation*, 626 F.3d at 978. The "interest of justice" relates to the efficient administration of the court system, and courts within this Circuit analyze such factors as: "(1) trying related litigation together; (2) having the trial before a judge who is familiar with the applicable law; and (3) the desire of communities to adjudicate matters that affect them directly." *Rosen v. Spirit Airlines, Inc.*, 152 F. Supp. 3d 1055, 1063 (N.D. Ill. 2015); *Rsch. Automation*, 626 F.3d at 978 (internal citations omitted). The interest of justice analysis may be determinative of transfer "even where the convenience of the parties and witnesses points toward the opposite result." *Id.*

**A.      The District Of New Jersey Is A Proper Venue**

The first determination on any section 1404(a) motion to transfer is whether the lawsuit "might have been brought" in the transferee district. 28 U.S.C. § 1404(a). Without question, this action could have been brought in the District of New Jersey. Defendant JJCI is a New Jersey corporation with its headquarters in Skillman, New Jersey. *See* Gunn Decl. ¶ 4. Unlike Illinois, New Jersey has general jurisdiction over JJCI. Venue would clearly be proper in the District of New Jersey, as the judicial district in which JJCI resides. 28 U.S.C. §1391(b); *see also De Falco v. Vibram USA, Inc.*, 2013 WL 1122825, at *10 (N.D. Ill. Mar. 18, 2013). The District of New Jersey would likewise have subject matter jurisdiction over the action pursuant to the Class Action Fairness Act. Accordingly, JJCI readily satisfies its threshold burden of establishing jurisdiction

and venue are proper in the transferee district. Indeed, the pendency of the substantially identical *Levy* action in the District of New Jersey confirms that this action "might have been brought" in the District of New Jersey. 28 U.S.C. § 1404(a).

**B.      The Convenience Factors Warrant Transfer To The District Of New Jersey**

As shown below, transfer is warranted because the balance of relevant convenience factors tips strongly in favor of transferring this action to the District of New Jersey.

**1.      Plaintiff's Choice Of Forum Is Entitled To Little, If Any, Weight**

Plaintiff's choice of this forum in this District is entitled to minimal weight because the Complaint is not only framed as a putative nationwide class action (Complaint ¶ 1), but additionally the District of New Jersey has a stronger relationship to the dispute.

Plaintiff's choice of forum is "greatly discounted in class actions." *Jaramillo*, 664 F. Supp. 2d at 914; *see also Blumenthal v. Mgmt. Assistance, Inc.*, 480 F. Supp. 470, 472 (N.D. Ill. 1979) ("[P]laintiff's choice of forum becomes substantially less important when he sues representatively on behalf of a class . . ."). This is even truer in nationwide class actions. Because Plaintiff purports to represent a nationwide class of consumers Plaintiff's choice of venue will not be the home venue for all plaintiffs, and any forum will be inconvenient to some of the putative class plaintiffs. This alone weighs in favor of transfer to the District of New Jersey. *See e.g.*, *LaFleur v. Dollar Tree Stores, Inc.* 2012 WL 2280090, at *3 (N.D. Ill. June 18, 2012) (transferring putative nationwide class, significantly discounting Plaintiffs' choice of forum) *Jaramillo*, 664 F. Supp. 2d at 914 (transferring putative nationwide class to District of Kansas where Plaintiff's choice of forum would not be home venue for all plaintiffs).

Plaintiff's choice of forum is also given less deference "when another forum has a stronger relationship to the dispute." *Jaramillo*, 664 F. Supp. 2d at 914 (quoting *Amorose v. C.H. Robinson*

-8-

*Worldwide, Inc.*, 521 F. Supp. 2d 731, 735 (N.D. Ill. 2007)). "[W]hen conduct and events giving rise to a cause of action did not take place in the plaintiff's selected forum, the plaintiff's choice of forum has minimal value." *Preston v. Am. Honda Motor Co., Inc.*, 2017 WL 5001447, at *3 (N.D. Ill. Nov. 2, 2017) (citation omitted). Courts in this District have repeatedly recognized in comparable consumer class actions premised on alleged misrepresentations and related omissions that the conduct giving rise to the plaintiff's claims favors transfer to the District in which the defendant's headquarters are located, because that is where the alleged misrepresentations and related corporate decisions were made. *See Gierwatowski v. Trader Joe's Co.*, 2021 WL 2660760, at *1 (N.D. Ill. June 29, 2021) (transferring putative class action to forum where defendant was headquartered and where "decision-making regarding labeling and marketing of the product" occurred); *Preston*, 2017 WL 5001447, at *3 (transferring putative class to defendant's headquarters where material events took place); *Jaramillo*, 664 F. Supp. 2d at 914 (same). Here, the operative facts concerning Defendant's challenged practices stem from where JJCI's corporate decisions were made concerning the products' challenged labeling, marketing, disclosures, and warnings – which is in Skillman, New Jersey, where JJCI is headquartered. As set forth in the Declaration of Euen Ekman Gunn, JJCI's Office of Consumer Safety and Regulatory divisions are located in Skillman, New Jersey at JJCI's headquarters, as are JJCI's corporate officers responsible for the OGX Products challenged in this action. Gunn Decl. ¶ 5.

    **2.    Situs Of Material Events**

"[W]here a claim revolves around large-scale misrepresentations or statements to consumers, the situs of material events is where the defendant made the underlying business decisions." *Preston*, 2017 WL 5001447, at *3. As outlined above, the underlying business decisions related to the OGX Products and DMDM Hydantoin occurred at JJCI's headquarters in

Skillman, New Jersey. *See* Gunn Decl. ¶ 5. Plaintiff's allegations concern the conduct of JJCI, which is centered in New Jersey, and "the material events are not where customers made their purchases . . . ." *Rosen*, 152 F. Supp. 3d at 1060. Therefore, this factor weighs in favor of transfer.

### 3. Ease Of Access To Sources Of Proof

Courts within this District have found transfer appropriate where there is an overwhelming presence of evidence in the transferee district and none in the original forum. *See Craik v. Boeing Co.*, 37 F. Supp. 3d 954, 961 (N.D. Ill. 2013) (transfer to Western District of Washington where evidence was located and where no evidence was located in Northern District of Illinois). Additionally, where the complaint's allegations are not substantially connected to the original forum, but involve defendant's acts in the transferee forum, transfer is warranted. *See Chukwu v. Air France*, 218 F. Supp. 2d 979, 989 (N.D. Ill. 2002). In *Jaramillo*, the Court found that transfer was warranted to the district where documents and decision making employees were located. 664 F. Supp. 2d at 914. Similarly here, the documents and tangible evidence relevant to Plaintiff's attack on JJCI's labeling and marketing of the OGX Products are located in New Jersey, at JJCI's corporate headquarters, where Defendant's servers, files, and documents are maintained and kept in the ordinary course of business. *See* Gunn Decl. ¶ 6. Because the evidence is located in New Jersey, transfer is warranted.[4]

### 4. Convenience Of The Parties And Witnesses

#### a. Convenience Of The Parties

In determining the convenience of the parties, courts consider "the parties' respective residences and their ability to bear the expenses of litigating in a particular forum." *LaFleur*, 2012 WL 2280090, at *5 (citation omitted). In *LaFleur*, defendant showed that litigating a case in the

---

[4] While this factor tips in favor of transfer, at the very worst this factor is neutral. *See Rosen*, 152 F. Supp. 3d at 1061.

Northern District of Illinois would pose a legitimate hardship, given that the location of its headquarters, evidence, and witnesses were in Virginia. *Id.* JJCI would experience the same hardship if it were required to litigate in this District as opposed to the District of New Jersey. JJCI's headquarters are located in Skillman, NJ, and as addressed above, all relevant evidence is located in New Jersey. Further, because Plaintiff seeks to represent a nationwide class, putative class members will be inconvenienced by either venue. *Id.* Therefore, convenience of the parties favors transfer to the District of New Jersey.

        **b.    Convenience Of Witnesses**

The convenience of witnesses is the most important factor in the analysis for transfer. *Id.* at \*4. The convenience of non-party witnesses includes employees of JJCI who will not be called to testify as Rule 30(b)(6) witnesses. *See Jaramillo*, 664 F. Supp. 2d at 915. Here, Defendant's executives, scientists, and other witnesses with relevant knowledge, information, and documents concerning Plaintiff's claims are overwhelmingly located in the District of New Jersey, where JJCI is headquartered. *See* Gunn Decl., ¶ 5. For instance, JJCI's senior managing executives who are responsible for the challenged aspects of the Products – including research and development of the OGX Products and DMDM Hydantoin, as well as the safety of the OGX Products, and various ingredients – are located in New Jersey, as are the heads and responsible persons in JJCI's Global Consumer Care, Regulatory, and Research and Development divisions, and JJCI's Office of Consumer Medical Safety. Gunn Decl. ¶ 5. This includes Adriana Haydee Potocki (M.D.), Global Medical Safety Director, Euen Ekman Gunn, Leader for Research and Development, Homer Swei, Director of Product Stewardship, and Cassandra Stafford Adams, Operations and Project Management Leader for the North American Consumer Care Center, among many others. *Id*.

While JJCI is a large corporation and thus there may be JJCI executives and employees

outside of New Jersey with knowledge or information germane to Plaintiff's claims and the OGX Products, such as Jane Rodriguez-Javier, Director of Regulatory Affairs for Vogue (*Id.*), all such persons would ultimately report to senior managing executives located in Skillman, New Jersey, who make the corporate decisions challenged by Plaintiff's claims. *Id.* Indeed, ultimately, JJCI's corporate decisions concerning the Products' labeling and marketing are all made at JJCI's corporate headquarters, which supports transfer to the District of New Jersey.

### C. The Interest Of Justice Factors Warrant Transfer To The District Of New Jersey

"A decision to transfer venue under section 1404(a) relies heavily on consideration of the interest of justice, which 'may be determinative in a particular case, even if the convenience of the parties and witnesses might call for a different result.'" *Rosen*, 152 F. Supp. 3d at 1062 (quoting *Coffey v. Van Dorn Iron Works*, 796 F.3d 217, 220 (7th Cir. 1986)). Even if the convenience factors addressed above do not weigh in favor of transfer, which they do, the interest of justice weighs heavily in favor of transfer to the District of New Jersey, in light of an identical class action pending in that District.

#### 1. Coordination Of This Action And *Levy* In The District Of New Jersey Is In The Interests Of Justice, And Tips Overwhelmingly In Favor Of Transfer

Section 1404(a) "was designed to prevent the situation in which two cases involving precisely the same issues are simultaneously pending in different District Courts." *Jaramillo*, 664 F. Supp. 2d at 916 (quoting *Aland v. Kempthrone*, 2007 WL 4365340, at *5 (N.D. Ill. Dec. 11, 2007)). As the U.S. Supreme Court has long insisted: "To permit a situation in which two cases involving precisely the same issues are simultaneously pending in different District Courts leads to the wastefulness of time, energy and money that § 1404(a) was designed to prevent." *Continental Grain Co. v. The FBL-585*, 364 U.S. 19, 26 (1960).

Both this action and *Levy* seek certification of nationwide classes based on substantially

similar allegations of consumer fraud arising from the use of DMDM Hydantoin as an ingredient in the OGX shampoo and conditioner products. Both actions challenge the same alleged misrepresentations and claimed failure to warn about the alleged risks of hair loss and scalp irritation, and thus, both indisputably raise the same or substantially similar issues. Courts within this District have consistently found transfer warranted where nearly identical class actions were pending in another District. *See, e.g.*, *Gierwatowski*, 2021 WL 2660760, at *1 (transferring action to Northern District of California where identical action was being litigated); *De Falco,* 2013 WL 1122825, at *10-11 (transferring action to District where substantially similar class action pending); *Jaramillo*, 664 F. Supp. 2d at 916 (transferring action to District of Kansas where substantially similar action pending). Indeed, here, as it was in *Jaramillo*, the parties and claims in this action and the *Levy* action "are so similar that it would be wasteful and duplicative to have two different courts familiarize themselves with the controversy." 664 F. Supp. 2d at 916. Further, the actions involve nearly identical factual allegations, and overlapping putative classes. Allowing these actions to proceed separately risks "inconsistent outcomes and unfairly increases the burden on the federal court system." *Gierwatowski*, 2021 WL 2660760 at *1. The court in *De Falco* highlighted the multitude of issues with allowing substantially similar actions to proceed separately:

> Allowing discovery and motion practice on these issues to proceed in two different district courts would result in duplicative document productions, depositions, and briefing. The inefficiency in having two district courts decide discovery disputes could be compounded if either party decides to appeal a decision because two different circuit courts would be required to decide the same issues for the same parties. To allow these parallel cases to proceed in two different courts would undermine the public's interest in judicial economy.

2013 WL 1122825 at *11. Transferring this action to the District of New Jersey would eliminate any potential inefficiencies and would be in the interests of judicial economy.[5]

### 2. Familiarity With Applicable Law

While this action includes claims under Illinois law with which this Court is familiar, federal courts routinely apply the laws of other states. *See Jaramillo*, 664 F. Supp. 2d at 917; *Miller v. SKF USA, Inc.*, 2010 WL 5463809, at *3 (N.D. Ill. Dec. 29, 2010) (federal courts "are accustomed to applying the laws of other states."). The District of New Jersey is clearly capable of adjudicating claims under Illinois law; this factor favors transfer or at worst is neutral.

### 3. Relation Of The Community To The Occurrence

The relation of the community to the occurrence is "often given a great deal of weight." *See Preston*, 2017 WL 5001447, at *8. In evaluating this factor, courts "tend to focus on both the situs of material events and the respective interests of the transferor and transferee forum in the case." *Id.* As addressed in detail above, the situs of material events for this action is New Jersey. *See* Section 2, *supra*. The first prong of this factor weighs heavily in favor of transfer. *See AL & PO Corp. v. Am. Healthcare Capital, Inc.*, 2015 WL 738694, at *5 (N.D. Ill. Feb. 19, 2015) (treating situs of material events as determinative of and coextensive with relationship of community to occurrences at issue).

Additionally, Illinois does not have a superior interest in this dispute to New Jersey. JJCI is headquartered in New Jersey, the allegations in this action related to business decisions made by JJCI, and New Jersey "has a powerful stake in adjudicating the business practices of companies

---

[5] Indeed, Plaintiff's counsel has just recently recognized in a separate action that transfer and consolidation of substantially similar class actions to the District of New Jersey is warranted and promotes judicial efficiency. *See generally* Brief in Support of Jimenez Plaintiffs' Motion For Transfer of Actions Pursuant to 28 U.S.C. § 1407, *In re Johnson & Johnson Aerosol Sunscreen Litig.*, MDL No. 3015 (J.P.M.L. July 29, 2021).

headquartered within its borders." *Preston*, 2017 WL 5001447 at *8 (transferring case to Central District of California where defendant was headquartered and was situs of material events in consumer class action). In *Preston*, the Court found that Illinois had no greater interest, because Honda's vehicles were sold nationwide. *Id.* Similarly here, the OGX Products are sold nationwide, and Illinois has no greater interest than New Jersey. Because New Jersey is the situs of material events, and Illinois has no greater interest than New Jersey in adjudicating this litigation, this factor favors transfer.[6]

## CONCLUSION

For all of the foregoing reasons, Defendant JJCI respectfully requests that the Court transfer this action to the United States District Court for the District of New Jersey pursuant to 28 U.S.C. section 1404(a). On balance, the interests of justice and convenience weigh in favor of transferring the action to the District of New Jersey.

Dated: August 16, 2021    By: */s/ Joshua W. Mahoney*

| | |
|---|---|
| Mark A. Neubauer | Robert E. Shapiro (#3125180) |
| (admitted *Pro Hac Vice*) | rob.shapiro@bfkn.com |
| mneubauer@carltonfields.com | Joshua W. Mahoney (#6297094) |
| Steven B. Weisburd | joshua.mahoney@bfkn.com |
| (admitted *Pro Hac Vice*) | Carmel I. Dooling (#6326826) |
| sweisburd@carltonfields.com | carmel.dooling@bfkn.com |
| CARLTON FIELDS, LLP | BARACK FERRAZZANO KIRSCHBAUM & NAGELBERG LLP |
| 2029 Century Park East, Suite 1200 | 200 West Madison Street, Suite 3900 |
| Los Angeles, CA 90067-2913 | Chicago, Illinois 60606 |
| Telephone: (310) 843-6300 | Telephone: (312) 984-3100 |
| Facsimile: (310) 843-6301 | Fascimile: (312) 984-3150 |

Attorneys for Defendant Johnson & Johnson Consumer Inc.

---

[6] At worst, because one of the putative classes is national in scope, there is no compelling community interest of one venue over the other, and this factor is neutral. *See Rosen*, 152 F. Supp. 3d at 1065; *Jaramillo*, 664 F. Supp. 2d at 917.

## CERTIFICATION OF SERVICE

I hereby certify that on August 16, 2021 a copy of the foregoing MOTION TO TRANSFER PURSUANT TO 28 U.S.C. § 1404(a) was filed electronically. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic foiling receipt. Parties may access this filing through the Court's system.

                                                */s/ Joshua W. Mahoney*
                                                Joshua W. Mahoney
                                                BARACK FERRAZZANO KIRSCHBAUM
                                                & NAGELBERG, LLP
                                                200 West Madison Street
                                                Suite 3900
                                                Chicago, IL 60606
                                                Telephone: (312) 984-3118
                                                Facsimile: (310) 984-3150
                                                joshua.mahoney@bfkn.com