IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

| | |
|---|---|
| Larissa Whipple, individually and on behalf of all other similarly situated, | |
| Plaintiff, | Case No. 3:21-cv-50226 |
| v. | Honorable Iain D. Johnston |
| Johnson & Johnson Consumer, Inc., | |
| Defendant. | |

**ORDER**

Before the Court is Defendant Johnson & Johnson Consumer Inc.'s (J&J) motion to transfer this nationwide class action to the United States District Court for the District of New Jersey. For the reasons explained below, that motion [23] is granted.

**I. Background**

Plaintiff Larissa Whipple brings this class action in which she claims that J&J's OGX-branded shampoos and conditioners "contain an ingredient or combination of ingredients that causes significant hair loss and/or scalp irritation upon proper application." Dkt. 7, ¶ 2. She alleges that she, along with thousands of other customers, have been injured. *Id.* ¶ 9. She further alleges that, in 2012, J&J announced plans to remove the problematic ingredients from all of their products by the end of 2015, and that they in fact did so. *Id.* ¶¶ 11–12. J&J later acquired Florida-based Vogue International, whose OGX line of shampoos and conditioners still contained those allegedly harmful ingredients. Notwithstanding J&J's public

1

statement in 2012, it allegedly "continued to market, sell, and profit off of the Products that contain ingredients [it] knew could harm consumers." *Id.* ¶ 12. Whipple further alleges that J&J has not made any attempts to reformulate the OGX products since acquiring the brand, *id.* ¶ 15, and that its marketing and labeling amounts to a failure to warn, misrepresentation, and fraud in violation of the consumer fraud laws of numerous states.

Whipple alleges that she is a citizen of Illinois, that she resides in Davis, Illinois, and that J&J is a citizen of New Jersey.[1] *Id.* ¶¶ 26–27. As putative class representative, Whipple alleges that she purchased the OGX-branded products in Davis, Illinois. She alleges that she reviewed the disclosures and marketing materials and believed the products to be safe based on those representations. She further alleges that she would not have purchased the products if she had known they were false. *Id.* ¶ 105.

She defines three classes of potential plaintiffs in her complaint. First, she alleges a putative nationwide class comprised of "[a]ll persons in the United States who purchased" J&J's OGX-branded shampoos and conditioners. *Id.* ¶ 108. She further includes a multi-state consumer fraud class comprised all persons in California, Florida, Illinois, Massachusetts, Michigan, Minnesota, Missouri, New Jersey, New York, and Washington who purchased the J&J product. *Id.* Lastly, she defines an Illinois subclass, which includes only those persons in Illinois that purchased the products. *Id.*

---

[1] Whipple asserts jurisdiction based on diversity of citizenship and the Class Action Fairness Act. Dkt. 7, ¶ 29.

Though her complaint focuses on Illinois state law for the Illinois subclass, she brings suit under the laws of each state in the multi-state class. Dkt. 7, ¶ 121. J&J now moves the Court to transfer this case, over Whipple's objection, to the United States District Court for the District of New Jersey pursuant to 28 U.S.C. § 1404(a).

I.   Analysis

If a plaintiff's chosen venue is proper but inconvenient, a defendant may seek transfer under 28 U.S.C. § 1404(a). *Atl. Marine Constr. Co. v. United States Dist. Ct.*, 571 U.S. 49, 60 (2013) (explaining that section 1404(a) codified the common-law "doctrine of *forum non conveniens* for the subset of cases in which the transferee forum is within the federal court system"). That statute allows for the discretionary transfer of cases: "For the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." § 1404(a). The decision whether to transfer rests within the discretion of the district court after a "flexible and individualized" case-by-case consideration of convenience and fairness, as well as the public's interest in the efficient administration of justice. *Rsch. Automation, Inc. v. Schrader-Bridgeport Int'l, Inc.*, 626 F.3d 973 977–78 (7th Cir. 2010) (quoting *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988)).[2] The Court is mindful that discretion is not a point,

---

[2] The threshold question when the parties do not consent to transfer is whether the case could have been brought in the proposed venue in the first instance. 28 U.S.C. § 1404(a) (stressing "where it might have been brought"). Although Whipple does not consent to transfer, she did not respond to J&J's argument that venue would have been proper in the

but rather is a continuum. *Schering Corp. v. Ill. Antibiotics Co.*, 62 F.3d 903, 908 (7th Cir. 1995) ("But we have said many times that the term 'abuse of discretion' covers a range of degrees of deference rather than denoting a point within that range . . . ."); *see also Miller v. Lenz*, No. 08 C 773, 2010 U.S. Dist. LEXIS 4787, at *16 (N.D. Ill. Jan. 20, 2010). So, two courts faced with identical facts each exercising its own discretion could lead to opposite conclusions, with neither court abusing its discretion. *United States v. Williams*, 81 F.3d 1434, 1437 (7th Cir. 1996) (different judges faced with same facts exercising discretion can reach different conclusions).

### A. Convenience

The text of the statute requires district courts to use their discretion in considering three factors: the convenience of the parties, the convenience of the witnesses, and the interests of justice. § 1404(a). The moving party bears the burden of convincing the Court that these considerations weigh in favor of transfer. *Esposito v. AIRBNB Action, LLC*, N. 20 C 2713, 2020 U.S. Dist. LEXIS 217412, at *4 (N.D. Ill. Nov. 20, 2020). In discussing the convenience considerations, courts generally analyze (1) the plaintiff's choice of forum; (2) the location of material events; (3) ease of access to evidence; (4) convenience to the witnesses; and (6) any other considerations of convenience to the parties. *Rsch. Automation*, 626 F.3d at 978; *Esposito*, 2020 U.S. Dist. LEXIS 217412, at *5.

---

District of New Jersey in the first instance, and she has not argued that the District of New Jersey lacks personal jurisdiction over her. Dkt. 23, at 7; Dkt. 29, at 5. Thus, the Court considers this question satisfied and moves on because failure to respond is a forfeiture. *Bonte v. U.S. Bank, N.A.*, 624 F.3d 461, 466 (7th Cir. 2010).

First, in its discretion, the Court affords less weight to Whipple's choice of forum than it traditionally would. In a typical case, the court often affords great weight to a plaintiff's choice of forum. In a nationwide class action, however, the plaintiff's choice of forum is entitled to less weight. *Nicholas v. Conseco Life Ins. Co.*, No. 12 C 0845, 2012 U.S. Dist. LEXIS 69328, at *10 (N.D. Ill. May 17, 2012); *accord Bedient v. Safe Sec. Inc.*, No. 1:16-cv-02256, 2017 U.S. Dist. LEXIS 3443, at *6 (N.D. Ohio Jan. 10, 2017) ("While Plaintiff's claim to deference is 'considerably weakened' because she brings a class action, it is not obliterated."). Though courts disagree how much less weight to afford a plaintiff's choice of forum in class actions, the courts recognize that although the representative plaintiff prefers the chosen forum, "any member of the class who subsequently chooses to appear might be inconvenienced." *AL & PO Corp. v. Am. Healthcare Cap. Inc.,* No., 14 C 1905, 2015 U.S. Dist. LEXIS 19922, at *5–6 (N.D. Ill. Feb. 19, 2015).

Whipple represents a nationwide putative class of "[a]ll persons in the United States who purchased the Products." Dkt. 7, ¶ 108. She also defines a multi-state class of persons residing in California, Florida, Illinois, Massachusetts, Michigan, Minnesota, New Jersey, New York, and Washington. *Id.* Although she also defines a sub-class specifically for residents of Illinois, her action is undoubtedly a nationwide class. Thus, the Court takes her choice of forum into consideration, but, in its discretion, affords the choice less weight in favor of keeping the case in this Court.

Second, the location of material events weighs in favor of transfer. Whipple contends that she purchased the OGX-branded products in Davis, Illinois, where

she lives. Dkt. 29, at 4. That is no doubt an important consideration. But she brings claims against J&J for marketing and business decisions, as well as statements made, regarding the OGX-branded products. Although Whipple's use of those products is what gives her standing to bring this action, the material events she complains of likely occurred in New Jersey, as J&J contends. "Here, the operative facts concerning Defendant's challenged practices stem from where [Defendant's] corporate decisions were made concerning the products' challenged labeling, marketing, disclosures, and warnings – which is in Skillman, New Jersey, where [Defendant] is headquartered." Dkt. 23, at 9. This weighs in favor of transfer to New Jersey. With that said, however, that weight is lessened to some extent because it is unclear whether some of the relevant decisions were made in New Jersey or Florida.

  The parties seem to agree that J&J purchased Vogue International—and its OGX product line—in 2016. That transaction occurred after J&J announced it would begin replacing the allegedly harmful ingredients. Dkt. 23, at 3. Whipple then alleges that J&J "failed to change the ingredient profile of the products that did not maintain the same standards for consumer safety." Dkt. 7, ¶ 12. The decisions on how to integrate Vogue International into J&J likely occurred, as J&J argues, at J&J headquarters in New Jersey. But the Court recognizes that some of those decisions could have been made by the Vogue International team in Florida. Thus, this factor weighs in favor of transfer to New Jersey, but it carries slightly less weight than it otherwise would if all these decisions were made in New Jersey.

Third, the ease of access to electronic evidence is neutral. Like most modern litigation, much of the evidence in this case will be in electronic form. Dkt. 29, at 14; Dkt. 23, at 10 (referring to "servers, files, and documents"). Although J&J asserts that these electronic sources of proof are located at its company headquarters, the Court strains to see how the location of electronic evidence matters much. If evidence is electronic, it can be transferred electronically. *Edke v. Belden Inc.*, No. 21-cv-0813, 2021 U.S. Dist. LEXIS 132842, at *11–12 (N.D. Ill. July 16, 2021) (explaining that electronic records do not impose the burden that the location of evidence once did); *Crothall Laundry Servs. v. OSF Health Care Sys.*, No. 17-cv-8928, 2018 U.S. Dist. LEXIS 58864, at *19 (N.D. Ill. April 6, 2018) ("With regard to documents, Plaintiff is correct that this is a less significant factor given technological advances."); *Campbell v. Campbell*, 262 F. Supp. 701, 710 (N.D. Ill. 2017). Indeed, the Court is extremely familiar with the practice of imaging entire hard drives remotely. *DR Distribs., LLC v. 21 Century Smoking, Inc.*, 513 F. Supp. 3d 839, 900–01 (N.D. Ill. 2021). Because J&J has not convinced the Court how the location of this information matters, the Court gives it no weight.

The location of non-electronic evidence, however, favors transfer to New Jersey. Many of the witnesses relevant to this case are located in New Jersey. J&J enumerates some of them—though J&J also admits that some are located in Florida with varying amounts of required travel to New Jersey. Dkt. 23-1 (declaration of Euen Ekman Gunn). The proximity of the District of New Jersey to these witnesses in Skillman, New Jersey, favors transfer. If this were a case in which evidence

7

remained in Illinois, the analysis would be different. *HealthRight Prods., L.L.C. v. Coastal Counting & Indus. Scale Co.*, No. 17 CV 50203, 2019 U.S. Dist. 8598, at *9–10 (N.D. Ill. Jan. 27, 2019) (referencing a faulty machine as evidence remaining in Illinois, thereby potentially injecting inconvenience if the case was transferred). But Whipple's response failed to illuminate any evidence located in Illinois, other than Whipple herself. On the other hand, Whipple is correct that the weight afforded transfer must be lessened here because at least some of the witnesses are located in Florida. But this factor still favors transfer overall. Because this evidence comes in the form of witness testimony, the analysis necessarily overlaps with the convenience of the witnesses, though the convenience of the witnesses remains more important than the convenience of counsel or the parties themselves. *Am. Com. Lines, LLC v. Ne. Mar. Inst., Inc.*, 588 F. Supp. 2d 935, 946 (S.D. Ind. 2008).

Consideration of the convenience of the witnesses also weighs moderately in favor of transfer to New Jersey. Courts often consider this the most important factor in the analysis. *E.g., Sanderling Mgmt. Ltd. V. Snap Inc.*, No. 1:20-cv-04627, 2021 U.S. Dist. LEXIS 41652, at *9 (N.D. Ill. Mar. 5, 2021) ("The convenience of the witnesses constitutes the most important factor in the transfer analysis."); *First Nat'l Bank v. El Camino Res., Ltd.*, 447 F. Supp. 2d 902, 913 (N.D. Ill. 2006). Still, greater weight is given non-party witness than is given to employees of the moving party, "as it is presumed that party witness will appear voluntarily." *First Nat'l Bank*, 447 F. Supp. 2d at 913. And even if the witnesses are employees of the party

8

to the case, rather than named themselves, their willingness to travel is likely greater than witnesses outside "the control of the parties." *See id.*

Here, and as explained above, some witness travel will likely be required regardless of whether the case proceeds here or in the District of New Jersey.[3] As J&J points out, although some witnesses reside in New Jersey, others are in Florida. The Florida witnesses will have to travel anyway, so their necessity to this case does not weigh in either direction. Still, J&J points to several witnesses that work and live in the New Jersey area. After all, Whipple challenges decisions made by personnel at the J&J headquarters. Those decisions represent the crux of her case. To be sure, not all witnesses are located there. But on this factor, New Jersey is still the most convenient forum. That Whipple lives in Illinois does not change that. She brings a class action against J&J for its decision making. The only event that happened in Illinois was her purchase of the products. The crux of this dispute, and the witness thereof, mostly occurred in New Jersey.

**B. Interests of Justice**

The text of section 1404(a) lastly calls on courts to use their discretion to consider the interests of justice—often referred to as the public interest factors. 28 U.S.C. § 1404(a). The factors considered in the interest of justice analysis often "relate to the efficient administration of the court system." *Coffey v. Van Dorn Iron Works*, 796 F.2d 217, 221 (7th Cir. 1986). This includes whether consolidation with

---

[3] Whipple never argued that the availability, ease, and more acceptable use of video depositions should be considered in determining the convenience of parties and witnesses. Because Whipple has not raised this issue, the Court will not address it.

9

related suits would be possible in the candidate forum. *Id.* Though judges in out-of-state forums are fully capable of applying Illinois law, this analysis also considers the candidate forum's familiarity with applicable state law. *Id.* (citing *Van Dusen v. Barrack*, 376 U.S. 612, 622 (1964)). Courts also consider "the relationship of each community to the controversy." *George & Co. LLC v. Target Corp.*, No. 20 C 6219, 2021 U.S. Dist. LEXIS 131423, at *12 (N.D. Ill. July 14, 2021).

Although Whipple defines an Illinois subclass, and claims violations of Illinois law, her suit asks the Court to apply the state laws of at least ten states—California, Florida, Illinois, Massachusetts, Michigan, Minnesota, Missouri, New Jersey, New York, and Washington. Dkt. 7, ¶ 108. Thus, regardless of which district court hears the case, the judge will be asked to apply law from several different states. Indeed, Whipple asks the Court to apply the laws of Illinois as well as the laws of New Jersey. Thus, this factor is neutral.

The relationship of each community to the controversy weighs in favor of transfer. Although Illinois has an interest in resolving the putative subclass' claims locally, Whipple's suit also names a multi-state class that includes New Jersey. New Jersey likewise has an interest in local resolution of suits involving its citizens. Furthermore, New Jersey has an interest in suits against J&J, given that it houses J&J's headquarters. In *Body Science LLC v. Boston Scientific Corporation*, 846 F. Supp. 2d 980 (N.D. Ill. 2012), another court in this district considered similar facts. There, the only activity connected to Illinois was the sale of the relevant products. But the products were developed, manufactured, and marketed in Massachusetts

10

and Minnesota. Thus, the court determined that those states had the greater interest. *Id.* at 998. Furthermore, the court determined that California and New York had greater interests than Illinois because two defendants headquartered their businesses in those states respectively. Thus, for separate reasons, all of those states had greater interests in the suit than Illinois. *Id.* The same is true here. The business decisions at issue in this case largely happened at J&J's headquarters in New Jersey. Any other relevant decision occurred at Vogue International's former headquarters in Florida. Like the facts in *Body Science*, Illinois' only connection to this suit is that Whipple, and her proposed subclass, purchased the complained-of products here. Thus, New Jersey has a greater interest in the adjudication of this suit. New Jersey's interest is particularly great because the proposed class includes plaintiffs from around the country, including New Jersey, who would have purchased the products in each of those states.

At this point in the analysis, the factors taken together weigh in favor of transfer. But the respective desirability of resolving the present controversy in each locale additionally weighs heavily in favor of transfer. In analyzing this factor, courts often consider whether the candidate forum presents an opportunity to consolidate related litigation. *Coffey*, 796 F.2d at 221; *George & Co.*, 2021 U.S. Dist. LEXIS 131423, at *14; *Aliano v. Quaker Oats Co.*, No. 16 C 3087, 2017 U.S. Dist. LEXIS 1158, at *10 (N.D. Ill. Jan. 4, 2017) ("Cases in which the interest-of-justice element may be determinative include those where there is related litigation in a forum where consolidation is feasible."). "Substantial efficiency gains can often be

11

realized by transferring parallel, or nearly so, class actions to one district." *Edke v. Belden, Inc.*, 2021 U.S. Dist. LEXIS 132842, at *13–14. (N.D. Ill. July 16, 2021).

Here, the parties agree that at least two other similar cases are being litigated in federal court. First, the District of New Jersey is litigating a similar suit, but the court in that case is currently considering the plaintiff's motion to voluntarily dismiss under Federal Rule of Civil Procedure 41(a)(2). *Mason et al. v. Johnson & Johnson Consumer Inc.*, No. 3:21-cv-501022 (D.N.J. Aug. 27, 2021), at ECF 14. Still, the result of that motion is not a foregone conclusion because J&J is vigorously opposing it. *Id.* at ECF 16. Second, the Central District of California recently transferred a similar action to the District of New Jersey. Dkt. 31-1 (attaching *Moreno v. Johnson & Johnson Consumer Inc.*, 2:21-cv-02666 (C.D. Cal. Oct. 5, 2021)). That case also presents a consumer class action against J&J for its marketing and purported misrepresentations of the OGX-branded shampoos and conditioners and their purported use of the same ingredients. Like Whipple, the class representative purchased the OGX-branded products and allegedly suffered hair loss by using those products. There, the court ruled that the relevant factors weighed heavily in favor of transfer. *Id.* The same is true here, but the potential for consolidation of these two cases (now that *Moreno* has been sent to the same court) makes the argument even more compelling—regardless of whether that court rules in favor of J&J on the motion to dismiss in *Mason*. Thus, the interest of justice heavily favor transfer to the District of New Jersey.

## II.   Conclusion

In exercising its discretion, the Court grants J&J's motion to transfer this action to the United States District Court for the District of New Jersey.


Date:  October 25, 2021

_____
Honorable Iain D. Johnston
United States District Judge